Good morning, and may it please the Court, Michael Chase for Plaintiff and Appellant, Bank of Sacramento. This case was dismissed on the pleadings on a Rule 12b-6 motion. I want to make three main points this morning that I think compel reversal. First, the bank seeks indemnification for a covered loss. The coverage grant in the policy is on page one of the policy, and it says that subject to exclusions, Stewart Title would insure up to the policy amount against loss or damage sustained by the insured by reason of any encumbrance on title or unmarketability of title. Under California law, coverage provisions are interpreted broadly. The losses sought by the bank here are similar to those allowed in the HODIS case and the NEBO case cited in the briefs, and also similar to the reliefs sought in the Hatch case and the Mellinger case, both of which were allowed to proceed to trial. Unless coverage is limited or excluded elsewhere in the policy, and keeping in mind, it must be done so in a conspicuous, plain, and clear manner, and any limitation or exclusion must be narrowly construed, the Stewart Title is liable for covering this loss. What loss? The losses here are the inability to sell the property at the time of foreclosure. And that resulted in both holding costs, carrying costs, payment of property taxes, and the inability to sell the property at a value much closer to the loan amount of $10.8 million. Do you have any authority for the proposition that changes in market value are covered, in particular that there's proximate causation link between the alleged breach and the change in market value? There's nothing in California law that prohibits that. And this supports it. I mean, frankly, in most times with over time values going up, this might eviscerate the value of title insurance because someone could come in and say, well, gee, wait a year, you're going to sell the property for more money anyway, so no loss. And I have not heard that applied in this context before. So I need something that tells me it's okay to stick the title insurer with the decline in market value. Well, the insurer agreed to cover it, agreed to cover the loss. And it's similar to the precise relief sought in the Hatch case. Lost profits are also sought in the Mellinger case. And we would point to those as similar examples to what is being sought here. You're not, however, at least if I understand your briefs, you're not contending that it was the sale at 10.6 that fell through that is the benchmark. And if I may ask, why not? If you in fact lost the sale because of the pendency of this? Because title was ultimately cleared. And since title was ultimately cleared, the bank would have been able to sell the property after title was cleared, just not at the same amount as it would have been if the title weren't unmarketable in early 2008. And so in some cases in California, including the Carl case, you would look right at the time of foreclosure to decide what the loss is. And if that turns out to be the damage calculation that would apply here, it would be a much larger number because the bank couldn't sell the property. It was worth much less. But after title was cleared, it did have a value. And so our argument is give us the difference between the two values. But that, as far as I can tell, would be a new principle of California law, true? It's not. I mean, Hatch is a Massachusetts case. I have no idea whether California courts would find that persuasive or not. Well, again, coverage provisions are interpreted broadly in California. And there's nothing in California that says it's not allowed. I understand that. I'm just saying it's a new proposition in the case law, true? Not in California. We have not found a case that sought this precise relief. Or, as I know you point out, that precludes relief. That's correct, Your Honor. The second point. Is there a question if California has a certification procedure that this Court should certify to the? We don't think that's required here. We think there is now. Well, I'm saying should or ought, not necessarily required. I'm sorry, Your Honor. No problem. Yes, there is a certification procedure to the California Supreme Court. It's a very lengthy procedure. Obviously, we think that the California case law is clear enough to allow at least this to be past the pleading stage, allow the facts to develop. And it's your contention that the provision includes not just compensatory damages, i.e., an adverse judgment, or, in this case, it's equivalent to the settlement of the lawsuit, but also what I'd call consequential damages. Isn't that what we're talking about? No, I don't think that's the correct distinction, Your Honor. I think that Stuart Title, as it was required to under the policy, did fund the defense. And after a long period of time, litigation didn't clear up anything. They did clear Title by paying the senior encumbrancer. And that's not part of the relief that we're seeking. Oh, I understand that. It's relief that you've gotten. As they were required to provide under the policy. Sure. And my question is, does the policy then extend your view to this kind of unforeseeable and consequential damages? And isn't that why they say, use a limiting phrase, adverse judgment, the cabin, the exposure? I think Your Honor is referring to the exclusion in 8b. And I'm going to address that next. 8b should be read in connection with 8a. 8a is the provision that says that if Stuart Title, as they did, does clear Title and does so in a reasonably diligent manner, then it can avoid indemnifying for covered losses. But here our claim, of course, is that that didn't happen. It did not happen in a reasonably diligent manner. That issue has not been reached because it was dismissed on the 8b ground. 8b, it does not mean that any time there's litigation without an adverse judgment that they can avoid liability. It was intended to allow the insurer to try to turn around an adverse judgment in the trial court. It's a way of the insurer can tell the insured, hey, yes, we lost here in the trial court, but we're going to get this thing turned around on appeal. So wait until that happens, and we've exhausted our appeals. And that's just not our situation at all. Here, litigation, there did exist litigation, but it was dismissed. If you interpret 8b the way that Stuart Title suggests, the major problem right away is 8b would apply whether or not the title defect is clear. It would write 8a out of the contract. Exactly. It would render. And I can't really understand that, and I tend to agree with that view. Okay. And I would just point out another thing, that 8b, it says, applies in the event of any litigation. And so most cases settle. And when most cases settle, they don't generally result in a judgment. And so whenever a case would settle, the first-party coverage for covered losses would be lost because no judgment would be entered. It would almost render the contract illusory. And we did pose a hypothetical in our opening brief that was unresponded to by Stuart that under their interpretation, taking it to the extreme, they could file a declaratory relief action on day one, dismiss it on day two, and say you don't have any more coverage because there was litigation without a judgment. So we think that's an unreasonable interpretation of 8b. It ought to be interpreted as it has been in the HOTIS case and the Hatch case and the Cocoa Properties case. I'm not a lawyer, much less a lawyer in this area, but I do think that that would touch upon my sense of the breach of the covenant in a good faith and fair dealing if they pulled stunts like that. So I didn't find the hypothetical particularly persuasive. It's just highly unlikely. But it is true, of course, that in most cases, most cases do settle and they don't have a judgment. Oh, absolutely. I understand that. I think we have the argument at hand. Do you have any points you want to make, or do you want to reserve time for rebuttal? I'll reserve the balance of my time. Thank you. Thank you. I've told you what I'm thinking and how I'm inclined to rule with regard to that, the issue of the construction of the contract, and how come I'm wrong? Because I don't, if I recall from reading the lower court's opinion. You're wrong. He didn't. I don't think the lower court looked at that issue, or if it did so, it didn't look at the construction.    The construction, yes. I think, before you, sir, why don't you identify yourself, otherwise I apologize. May it please the Court. Okay. Now plunge in and answer the judge's question. Counsel concedes that we, that Stewart complied with its duty to defend and paid the attorney's fees from day one to the end. It concedes that we settled the case and removed the alleged encumbrance. Counsel also, I think, acknowledges that most cases do settle. So you have to read the policy in light of that recognition, in light of the fact that the policy should be interpreted to reflect the mutual, the mutual intentions of both sides, the insurer and the insured, and taking into account the statement of the X Warehouse case in California, that the Court should not indulge in a forced construction to fasten liability on an insurance company which it has not assumed. Well, I'm not sure what's the forced construction. I mean, if 8A makes the point that the company must proceed in a reasonably diligent manner, well, isn't there room for an argument that in this case the insurer wasn't reasonably diligent? No. Why not? Okay. Because you have to interpret 8A and 8B in connection with the other policy provision. You're saying there's not a requirement for reasonable diligence. No, there is, but we complied with that. Well, how can we say that at this stage of the case? Because we complied with it. Because there are cases that make clear that the term reasonable diligence is different than and must be interpreted different than the cases he relied on. The Hatch case. We're at a motion to dismiss. No, but, Your Honor. If you acknowledge there's a requirement for reasonable diligence, are you telling me there's not an allegation in this complaint that the insurer was not reasonably diligent? There is not a factually supported, cognizable, plausible argument in light of the facts in the complaint and subject to judicial notice. I don't believe that the reasonably diligence standard in 8A applies to 8B, and I'll explain why. But even if it did, even if it did. You have a case, a very complex case, which was resolved completely within less than two years. And if you look at the other cases, the Hatch case, he cites, it was six years of litigation. Right, but so that's a, you know, how long is reasonable? That's the question of fact. No, because I think that you. Under the circumstances. Well, in Bar K, the Court affirmed summary judgment. Summary judgment's different. I understand, but he said there is no question of fact as a matter of law, the resolution of a complex case with an unclear claim of encumbrance. Remember, this is not the usual case where you have a clear, enforceable prior mortgage, a clear, enforceable encumbrance or a denial of coverage. Shouldn't that have made it easier? Pardon? Shouldn't that have made it easier? There's no point in sending it back, Your Honor, because if you look at the record on. No, I mean, there was no formal lien. There was no. You had a. To the contrary, Your Honor. This was a very complex, difficult case, and it was a case in which the bank itself was arguing there's no enforceable valid lien. In most cases, in most cases, either you have a valid enforceable lien or you have the insured saying, yes, there is one now, insurance company, you take care of it. This is exactly the opposite. It was the Booten Firm itself that represented the bank during the first month and the last nine months of this litigation. Okay. May I stop you there, because I don't want you to lose your point, but this is a point that sort of confuses me. As I understand it, your company undertook defense without reservation initially. Based on representations from him. Yes is fine. I understand your position. And then jerked the defense in the middle of the suit. No. Well, wait a minute. You stopped. I mean, normally, let me back up so you know where I'm coming from. Normally, what happens is this. Let's say there's a reservation of rights letter where it comes sooner or later. Company agrees to defend under reservation of rights or later sends a reservation of rights letter. The defense continues, and then there might be a deck action filed or something else, but you don't remove the counsel that's in place. And here, according to the district court, and I gather that must happen, you thought there was a conflict of interest. And I just don't understand. No, Your Honor, I think you're misunderstanding the record and California law. So here is the situation. The Boutin firm is the bank's chosen counsel. Right. And they tender. They tender, and immediately on the first day, the claims adjuster, who is not a lawyer, said, yes, go ahead, we will authorize you, the Boutin firm, to file the motion to expunge the list pendants. Based on representations that the bank did not know about the option agreement, then a month later, the claims adjuster said, we're accepting without a reservation of rights. Right. Now, so what happens there is Stewart gets to to appoint, substitute counsel. It's appointed counsel. This is an important point. But the counsel represents. The insured, not Stewart. Exactly. Exactly. So that's. It's studious to. The insured. True. Okay. Okay. So this is. Okay. So then why did you jerk the defense? We didn't jerk the defense, but that firm is. You said, we will no longer supply counsel. No. No. We will pay for counsel. Because under California law, under Coomis. I understand the Coomis. Under Coomis, we're. Coomis is entirely different. No. Your Honor, I respectfully disagree, because we didn't jerk counsel. No. You stopped the defense. We didn't stop the defense. We kept paying for the defense. I understand. And we. But I got to tell you that normally, and I understand Coomis counsel quite well, but Coomis counsel is. And if they wanted Coomis counsel, that's a whole different thing. They did. They wanted. They wanted. But that's nowhere in the record. No. Well, what it says is there's a conflict of interest, which leads me to believe, and maybe you can correct it because it goes to this case, is that the attorney developed information that was harmful to the insured and gave it to you. No. All right. Well, see, I can't decide that on the basis of the pleadings. And the pleadings and what the district court says, conflict of interest, I say, adverse to the insured. And this is not argument on summary judgment. I'm sorry. Yeah, go ahead. Not argument on summary judgment, because I don't see any of this in the complaint. It's argument. It would be argument on summary judgment. But, Your Honor, no, because in the record is the reservation of Bright's letter. And the reservation of Bright's letter is part of the judicial notice. I do encourage you to read that. The next question I would have if this were argument on summary judgment as a trial judge when this case came back is, well, I'd turn to them and say, all right, what happened? How can you complain about their lack of diligence when you got the file? And I assume you've been reading along and following along. You didn't have to spend nine months getting up to speed, et cetera, et cetera. All of this you've been talking about as far as I know. I do think that's true. And I don't want to quarrel with you either about what happened here. But, I mean, as we're talking about judgment on the pleadings, I read this and I say, boy, there's a lot I don't know. And there could be an argument that, A, the reservation of Bright's letter was way too late, B, that the insured was prejudiced because the counsel was withdrawn later, and your argument would be we gave them cumulus counsel, they wanted cumulus counsel, we paid for it, no harm, no foul. In fact, they were advantaged. But that's not from the pleadings. That's – I'm just telling you, it doesn't seem like a judgment on the pleadings case to me. But you're – it is in the – it's in the materials that were accepted and subject to judicial notice. Because under the law, they said we want the Booten firm. We wanted them at the beginning. They wanted them in the – in the middle. The insurance company, when it said, we believe based on the facts developed in the underlying case, we are now asserting a reservation of rights. Your Honor, I would – I would refer you to the Ringler case, ADL, after Ringler and the Atlas case. The insurance company has a clear right to change its mind and assert a reservation of rights later based on facts developed in the underlying litigation. But when you have a reasonable diligence component to the insurance policy, which is different from a lot of insurance policy. They're interpreting – they want you to dramatically change California law in a way that is not supported by the case law. California law doesn't require reasonable diligence? Reasonable diligence in this context, if it applies, and we say 8b is independent from 8a. That's why I – I'm looking at 8b and 8a, but separate from that, just as a general proposition, I can't believe that California law doesn't require reasonable diligence on the part of the insurer. Let me go through the provisions, because I think you have to read section 4, section 6, section 7, and section 8 all together. At the end of all of that, you reach a conclusion there is no requirement of reasonable diligence. When there is a third-party claim and it's settled within two years, the – Once you start tossing in the facts, you're asking us to make a motion to dismiss decision with regard to particular facts in this case. No, Your Honor, but the reasonable diligence was by promptly, immediately getting counsel and paying for it for the whole time. That's all that's required. Let me play devil's advocate for a moment. In a third-party claim. Let me play devil's advocate for a moment. I mean, I'm reading this thing and I'm saying, well, I suspect the argument is this. If first you provide a counsel which deprived us of counsel of our choice, and that's fine as long as you're going to assume liability. And that counsel didn't do anything. Our counsel would have promptly resolved the case within X period of time and we would have saved millions of dollars. By interfering first by assuming coverage and then rejecting it, you cost us the And that was the act that, of non-diligence, if you will, that cost us money. That – there's no California case that says that. The Mellinger case doesn't address this at all. No, it's fact-specific. Pardon? It's fact-specific. I mean, you can't – I mean, the problem is, and there have been a number of cases when an insurer, you'd agree with this wrongfully, withdraws counsel in the middle of a suit and doesn't provide for it. You've got problems. You say you're covered. We didn't withdraw counsel. We said you can – we will continue to pay. If an insurance company develops – I'm saying this is also fact-specific. I just don't know how you get to judgment on the fleets. And I'm not quarreling with you. I'm giving you an opportunity to persuade me otherwise, but it's hard for me to see. Because you can look at the entire record. And I would invite you to look at the docket sheet of the underlying case.   I don't think you can pull the judicial decision. You can take that. You can take judicial notice of that. Your clerks can pull that. And I would like you to go – I'd like to go through all the provisions of the policy to convince you that 8a and 8b are separate and in the canvas. Well, the policy is in front of us. Not the whole thing, just the –  But for a – I'm sorry. Let me ask a question, if I may. And that is – and if I'm wrong, tell me, please. But where in the district judge's order of dismissal is a discussion of what I consider to be the principal argument in this case, the ambiguity between the two clauses and the adequacy of the reasonable diligence contention in the complaint as pled? I don't see it there. I may have missed it. He – the judge – He found no ambiguity. End of discussion. So he didn't get into the issues that we're talking about. Because – but he's correct as a matter of law that there's no ambiguity. By my point, let's assume that we find – that we disagree, that we conclude as a matter of law he made a mistake. Yeah. And this complaint should not have been dismissed on that basis. It just seems to me that at that point we should send it back and say, Judge, go from here. And you can make all the arguments that you've been making up here, which I think really are summary judgment-style arguments because they depend upon at least some stuff outside the record. It's all within what was subject to judicial notice. Okay. And you have a case where you have, from beginning to end, it's resolved completely. The alleged encumbrance is removed entirely within two years. You're not answering my basic questions. Where in the opinion was all of this considered? He considered this when he – because he carefully went through every allegation in the complaint. He then looked at whether or not there was a withholding of benefits. And he said, no, there was no withholding of benefits. Is there any discussion of the timeliness, whether there was reasonable diligence? He found that 8b is separate and independent, and there is no reasonable diligence requirement in this case. This is what produced the question that I asked a few minutes ago, to which you gave me a very specific factual answer. But I do not believe that under California law or under this policy, there is no time limit imposed upon the insurer. If you can give me the authority to support the proposition, I'll listen to you. But if you're saying to me, well, he didn't talk about reasonable diligence because there's no obligation on the part of the insurer to act reasonably diligently, I got to say it's hard to believe. The reasonable diligence standard in 8a is satisfied by getting counsel appointed and paying for it. If you look, there's no other reasonable interpretation. And if you look at what the RTC judge said, he said the same argument, the same argument made by a bank in that case, a sophisticated financial institution, was patently unreasonable. Here's why. 4a says the duty of the insurance company is to promptly get pay, agree to pay for counsel. Unquestionably, we did that. That's 4a. Then you look at 4b and 4c. 4a gives, 4b gives the insurance company the option of initiating its own quiet title action. That's one way to get rid of an alleged encumbrance. But 4c says whenever the company shall have interposed a defense, then the company may pursue litigation to final determination. So the only temporal requirement in 4 is to get counsel on board right away, which we complied with. Then you look at 6, which gives additional options to the insurer, including the option to pay to settle a third-party claimant. And if you look at the language of 6, it says upon exercise by the company of the we paid everything, every penny. Then the company's obligations to the insured shall terminate. That's in 6. Then you look at 7, which is the limits of liability, and then you go to 8. And 8 has 8a and 8b, and they're separate and independent. And 8a does have a reasonable diligence standard. The other cases he relied on, the Hatch, which is out of State, the HOTUS, which is Maine, Mellinger didn't deal with this at all. That's the only California case. That has totally different language. This is a different policy form. The totally different language that he's relying on says you have to resolve the claim, quote, within a reasonable time. That's not what this policy says. And 8b says in the event of litigation, then there can be no liability without an adverse determination. You shouldn't interpret it the way that he is suggesting because it doesn't take into account the fact that 99 percent of cases settle. This was settled in favor of the insured. The alleged encumbrance, which was quite complex, was totally removed. And what is an insurance company supposed to do? I mean, think of this judge. Under the law, even appointed counsel, even when it's paid for by the insurance company, has obligations only to the insured. It has to listen to the insured. It takes strategic direction from the insured, not from the insurance company. Obviously, a third-party claimant is going to do what it's going to do and the court is going to do what it's going to do. And so, you're saying that the insurance company is going to do what it's going  Well, let me tell you something about it. You could control a defense, and in fact, you did select counsel. No. The law is we didn't control the defense. We had appointed counsel. That's a big difference, Your Honor. You selected counsel who was a representative. For a year. But for a year, and when they, the only thing they say, there's no allegation that they insisted you do something and the insurance company said, no, you counsel are prohibited. There's no allegation like that. So the allegation that we, quote, controlled counsel is No, but I think the theory is somewhat different. The theory is, look, if we knew from the onset that you were not going to, that you were going to contest liability, that you were going to reserve your rights, we would have supplied our own counsel. We would have diligently concluded this. We didn't worry about it so much. When you have counsel in place who's, and I grant your point, even accepting our direction and so forth, whether or not that's a successful argument is, well, all we had to do is pay for counsel and that's the end of it. And, you know, you may be right. But I'm just saying that on this record, just on the pleadings, it's hard for me to say that there's no issue of fact on that. Well, Your Honor, I think that, but the Court properly interpreted the, interpreted the policy and the obligations. Just think about this, Your Honor. Suppose at the beginning of the case, Andrews Dixon took very aggressive positions. That's the plaintiff in the underlying case. It said not only is the bank, as the foreclosing lender, it steps into the shoes of the prior, of the borrower, the developer, it assumed not only the obligation to swap one parcel for another parcel within the 125 acres, but also, also that the lender assumed obligations to get further entitlements to build housing, to put in infrastructure. Suppose Andrews Dixon up through the first mediation said, I want $50 million to settle. As a matter of law, the insurer, the insurer has no obligation to settle a case below policy limits. There is no allegation in this case, there's no allegation in the complaint, that the bank went to Stewart before October 27, 2009, the first, in the first mediation, with a policy demand, with a demand below policy limits. So if you interpret, well, if you reverse, you would be creating brand-new law both about duties of the insurer and you would create a flood of litigation. I think not. We're just saying you get beyond the pleadings on this and there are factual issues. I don't see how the flood comes in. You know, every time somebody says there's a flood of litigation, I always, I start building my arc. Okay. And, you know, so far it just sits there. Because there, as you point out, there's absolutely no case, no case in California, and there shouldn't be for the small amount that Stewart got for this lender's policy that puts us at risk for decline in market value while litigation is ongoing. That was not a risk that we assumed. And that's where the ex-warehouse comes in. There is the ---- I may not quarrel with that proposition, but that's not the only element of damage being pushed forward. Well, you're trying to defend the proposition basically that there's no reasonable diligence requirement or that we should accept as a matter of law at the pleading stage that there was no unreasonable delay here. That's an awfully hard proposition on a motion to dismiss. I understand. But under the facts that you can take notice of and are in the record, the complaint and what is subject to judicial notice, I submit respectfully that you can and should and the case that supports you is Bar K. None of the other cases have the same language in the policy that we do here. The cases that they rely on all have a within a reasonable time in the 7A. So it's different policy. Even NEBO, which they rely on and was distinguished in Bar K, is a different case with different language. And I understand Your Honors are saying if the reasonable diligence standard applies, and I go back and say if you interpret the entire policy, you will see that in a situation where there is a third party claim, not where the insurer decides, I'm going to exercise my option to bring a quiet title action, but where there is a third party action and there's no control over the course of litigation, then reasonable diligence is satisfied by appointing counsel and paying for counsel. Wasn't Bar K a summary judgment case? Bar K was, but what the Court said is there's no factual issue. There is no factual issue here that required a trial. And I'm saying based on the record you have. So you have an unusual record here because you have the pleadings and you have the judicial notice and you can look at the docket sheet in the underlying case. And, again, you're allowed even on appeal to take judicial notice of that. But Bar K said, what this boils down to, what the claim really boils down to, is you took too long to settle in a declining market. That's their theory. And they dress it up, but that's what their theory is. And Bar K says, and Bar K is the only case that talks about the same policy form with a section 8A and 8B. It says the language of 8A and 8B prohibit, quote, the recovery of damages resulting from the time taken to litigate the relevant dispute. And there, too, it was a complex case. There was back and forth. There were disputes about what the counsel should or shouldn't have done. And the Court said the reasonable diligence standard was satisfied by promptly paying for counsel to represent the insured in the underlying litigation and reaching a settlement of the underlying litigation in two years. So you can probably tell me this without having me look it up. What's the red flag in Bar K for? Why do you think it's a red flag? Because it is an unpublished decision. Uncitable decision. No, but we cited the Ninth Circuit authority that you can – it's persuasive to you. It's not inappropriate to cite it to you. But it hasn't been overruled. It just doesn't exist. It has not been overruled. Okay. And we looked, and I'm sure Mr. — Yeah. I just saw it here. I'm sure counsel looked, too. No, it is – it's just – it's not a published decision. Yeah. But it's certainly persuasive. And, again, all the other cases that he cites come from other States on different policy language. And I think if you think about what you would be doing, I understand you're saying, well, I'm going to send it back and it's going to be a factual issue. We're just musing it. We haven't decided. All right. But I think as a policy matter and a practical matter, you would be putting insurance companies in an impossible position because – What if we were to decide that they cannot recover damages for the diminution and the value during the pendency litigation? Would that relieve some of your anxiety? It would relieve $6 million in this case. Okay. But, I mean, in terms of the impact upon the insurance industry in California. I mean, if you held that, that would be unprecedented. And that would start a flood of litigation. I know we respect it highlands. No, I don't think you heard my question. You won on your damage contention relative to the loss of value during the pendency litigation. Okay. Their damages were three things. I understand that. I'm talking about the loss of value. But you've got to do more. Okay. Okay. I mean, if you did that, that helps. But the other two elements of damages are not cognizable. One, they said we want prejudgment interest. Well, this is not a claim on the guarantee or on the note. There is no prejudice. I do have to stop you now. You're way over your time. And our questions are taking over time. But if we go much longer, we're going to miss our flights out. Okay. Which would not be to your benefit. Well, Your Honor, all I can say is think of this practically and what position it would put the insurance company in. And given that it doesn't control the defense or the lawyers or the judge. I think we take your point. Okay. And we appreciate the zealousness. I hope I've changed your mind on 8a and 8b. Thank you. Okay. Well, we've talked a lot about a lot of things, but I hope you can be succinct. It's always hard to be the rebuttal after it lasts a day on the last calendar. I'll be brief. The district court didn't reach the reasonable diligence issue because Stuart Title did not move on that ground. Stuart Title expressly said in the motion to dismiss that reasonable diligence is not the relevant inquiry. That was at page 341 of the record. So they did not move or seek dismissal on that ground. And what is your answer to the how he reads the other policy provisions? I'm sorry? What is your answer to his presentation and reading of the operation of the other policy provisions? The other policy provisions don't relate to this question. 8a does mean when it says that if you clear title and want to avoid liability that way, you have to do it with reasonable diligence. And NEBO, which is a published case and thus binds California courts, does say that that's what it means. You have to clear title with reasonable diligence even in the presence of litigation. And in NEBO there was litigation. And the insured there, it took years to resolve. The insured there was entitled to recover. The lost rents that happened in the interim. So even if there's litigation pending, the insured is still covered unless the insurance company can get out through the exclusion. If the insurance company can't get out through the exclusion because of the lack of reasonable diligence, then the insured is covered under the coverage grant. On the issue of the diminution of value, if the court will give us two doors to choose through, one is having the court not resolve that because I don't think it needs to and letting the factual record develop or having the court decide that issue at this early stage of the case, we would choose the first door. Here we can have the facts develop. We can have the issue fully, you know, vetted before this Court has to decide that. In other words, if we send it back, leave it to the trial court to determine whether or not what the proper damages are. Right. Because there is at least the covered loss here of the carrying costs, which the district court neglected to cover. So let's assume for the sake of argument that the insurance company provides you with a defense on day one and defends you all the way through. You get to control the defense. Why haven't they complied with their duty of due diligence? I mean, you would concede that even when the plaintiff was right. It was resolved through a settlement. And only the insurance company can settle the case. The insured cannot do that. So in your theory, the defense has nothing to do with it. The defense here probably delayed it from being resolved. I mean, I wanted to address one point. One more point I wanted to address. He indicated that they felt justified in jerking panel counsel in the middle of the case. I shouldn't have used the word jerk. All right. Pulling panel counsel in the middle of the case because the bank wanted its normal firm to represent it. Well, that's not what the bank wanted at that point. There's no allegation to that effect. What the bank wanted was its own counsel to represent it through the entire litigation, not to have not one but two changes of counsel in the course of one lawsuit. So we would ask, since the carrying costs, we think there is clear precedent for awarding that as a covered loss, that's all this court needs to reach and can remand based on that. Thank you, counsel. It's been an interesting case, and we will go back and study the record and consider all you said today. And the case will be submitted for decision. Thank you. Thank you. We'll be in recess. All rise.
judges: Carr, Thomas, Clifton